# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 24, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000176-MR

WAYNE MURPHY                                                      APPELLANT

V.
ON APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE ROBERT B. CONLEY, JUDGE
04-CR-00149

COMMONWEALTH OF KENTUCKY                                          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART AND REMANDING FOR RE-SENTENCING

Appellant Wayne Calvin Murphy was found guilty of first-degree rape, first-degree assault and first-degree robbery by a Greenup Circuit Court jury. He was sentenced to life in prison on the rape conviction and twenty years each on the assault and robbery convictions. He appeals to this Court as a matter of right, asserting four errors: 1) that the trial court erred by admitting testimony concerning microscopic hair analysis; 2) that the Appellant was unfairly prejudiced when the trial court erroneously admitted evidence about the results of a presumptive blood test; 3) that the trial court erred by denying Appellant's motion for a directed verdict of acquittal due to insufficient evidence to sustain a conviction on the charges; and 4) that the trial court erred by ordering that the Appellant's sentences be served consecutively, rather than concurrently. For reasons stated herein, we affirm in part and remand to the trial court for re-sentencing.

On the afternoon of July 14, 2004, Jane Doe[1] was working at her long-time place of employment, the Superstar Video store in Russell, Kentucky. A man entered the store and after looking around, made his way to an employee-only area in the back of the store. Ms. Doe told the man he was not allowed in that area, whereupon he cursed at her and left the store. She then began cleaning the store.

Shortly thereafter, a second man entered the store. He attempted to rent a movie, but was told by Ms. Doe he would first have to establish a membership with the store. This man, Ryan Dixon, gave his driver's license to Doe, and she entered his biographical information into the store's computer. Dixon left with his movie after telling Doe he was going to go talk to a friend, but indicated to Doe he would return to select another movie.

Doe had resumed cleaning the store when she heard the scuffling of boots across the floor. Before she could react, Doe was struck on the back of the head. Doe was then dragged to the office area in the back of the store by Dixon and the man who had entered the store earlier, the man Doe would later identify as the Appellant, Wayne Calvin Murphy. Doe testified that Murphy beat her severely and demanded that she open the safe. Murphy kicked Doe in the stomach when she told him there was no money in the store's safe because she had just made a bank deposit. Doe further testified that when Murphy saw a picture of Doe's son he told her he would go to her house and cut her son's throat if she did not open the safe.

Doe testified that she attempted to escape after Murphy demanded the ring she was wearing. She threw the ring and ran, scrambling up the store's shelves in an

---

[1] The victim's name has been change in an attempt to protect her privacy.

2

attempt to climb through the drop ceiling and into a bathroom. But Murphy grabbed Doe by the hair and dragged her into a back room where, armed with a hammer, he violently raped Doe while Dixon held her down. Doe testified that after the rape, Murphy told her "kiss your ass goodbye and pray you go to heaven," before striking her viciously atop her head with the hammer.

Doe was discovered nude and bleeding by a customer who telephoned 911 telling the dispatcher that Doe was bleeding profusely with bone protruding from her skull. Doe suffered a near-fatal subdural hematoma in addition to abrasions and contusions to the arms, shoulders and vaginal area. Doe has undergone five surgeries arising from the injuries suffered in the attack.

Detective Tim Wilson of the Russell Police Department testified at trial that Dixon was immediately identified as a possible suspect because his personal information was still on the video store's computer when police arrived. This information would help lead the police to Dixon who implicated Murphy. Murphy was arrested two days later.

## I.    HAIR ANALYSIS

Appellant claims that the trial court erred when it permitted expert opinion testimony as to microscopic hair analysis. Appellant claims that hair analysis evidence is too unreliable and too prejudicial to be admitted at trial. When Appellant's trial counsel objected, the trial court overruled the objection, but asked Appellant's attorney if she desired a Daubert hearing on the issue. Appellant's trial counsel declined this offer.

Hair comparison by microscopic analysis has been admissible in Kentucky courts for many years. This Court has recognized that microscopic hair analysis has been "overwhelmingly" accepted in other jurisdictions and has authorized Kentucky trial

courts to "take judicial notice that this particular method or technique is deemed scientifically reliable."[2] Much of the authority cited in Appellant's brief is for the proposition that microscopic hair analysis alone, unlike modern DNA testing, is not a basis for positive personal identification. This was acknowledged by the Commonwealth's expert during defense counsel's cross-examination, along with other limitations inherent in such evidence.

The admissibility of evidence at trial is within the sound discretion of the trial court.[3] The hair analysis evidence, as in Johnson, was admissible to show that the Appellant was not excluded as the source of the hair found at the crime scene. Such evidence was particularly relevant where among the defenses asserted at trial, Appellant contended that he was not at the video store on the day in question and that someone else[4] committed the crimes. Furthermore, similarities between the Appellant's hair and the hair found at the crime scene are relevant circumstantial evidence to be considered alongside all other admissible evidence and accorded the weight deemed appropriate by the jury. While hair comparison evidence is far from conclusive, the trial court did not abuse its discretion in admitting the evidence at trial.

## II.    BLOOD TEST EVIDENCE

Appellant's second claim of error arises from the trial court's decision to allow testimony by the Commonwealth's expert witness that substances found on and about Appellant were blood. At trial, forensic biologist Shannon Phelps testified as to tests conducted on the clothing worn by Appellant at the time he was arrested, two days after

---

[2] Johnson v. Com., 12 S.W.3d 258, 263 (Ky. 1999).

[3] Ford v. Com., 665 S.W.2d 304 (Ky. 19884).

[4] John Barger, discussed infra.

the crime was committed.  Over Appellant's objection, Phelps testified that Murphy's shoes tested positive for the presence of blood.  However, the blood sample on the shoe was too small to go to further DNA testing or even to determine whether the substance was human or animal blood.  Because of this uncertainty, the Appellant claims that testimony regarding results of the test was unreliable and that he was prejudiced by its admission at trial.

Kentucky case law holds that the trial court has broad discretion with respect to determining the admissibility of evidence.[5]  An appellate court will not disturb the trial court's exercise of discretion to admit or exclude evidence except upon a showing of abuse of discretion.[6]

In the trial court's view, the testimony as to the presumptive blood test was relevant due to the possible presence of human blood on the Appellant's shoes making it somewhat more likely that he was involved in the violent assault.  Defense counsel capably took advantage of the slight value of this evidence and highlighted the limitations of the presumptive blood testing upon cross-examination.  While such evidence may prove very little, deficiencies in this type of evidence go to the weight assigned to it by the jury, not to its admissibility.  Thus, it cannot be said the trial court's decision to admit the evidence was an abuse of discretion.

## III.   DIRECTED VERDICT

Appellant's third claim of error is that he should have been a granted a directed verdict on all counts at the close of the Commonwealth's case-in-chief.  Appellant

---

[5] Owensboro Mercy Health Systems v. Payne, 24 S.W.3d  675, 677 (Ky. App. 1999).

[6] Fugate v. Com., 993 S.W.2d 931, 935 (Ky. 1999).

argues that because there was no admissible scientific evidence to support what Appellant characterizes as "unreliable eyewitness testimony," a directed verdict in Appellant's favor was required. Specifically, Appellant claims the victim's eyewitness testimony, and the so-called "snitch" testimony of Donald Eugene Howard and John Barger are insufficient to support a conviction. Nonsense.

Appellant claims that the victim's own eyewitness testimony was unreliable. In support of this proposition, Appellant cites to anecdotal information from unrelated cases and statistics from the Innocence Project regarding overturned convictions based on erroneous eyewitness identification. However, none of this has any direct relationship to the specific facts and circumstances of this case. In fact, the record reflects that the victim had substantial, protracted face-to-face interaction with the Appellant during the course of the robbery, rape and assault.

Donald Eugene Howard shared a jail cell with the Appellant in the days following Appellant's arrest. At trial, Howard testified that the Appellant admitted to him that the Appellant was present when the crime was committed, but otherwise Dixon was solely responsible for the victim's injuries. Howard further testified that he had received no consideration from the Commonwealth in exchange for his testimony.

John Barger arrived on the crime scene after the police arrived. Eventually, he told the police that he walked in on the crime scene inadvertently when he stopped to inquire about possible employment at the video store. Barger testified that when he entered the store he saw Dixon and the victim who was on her hands and knees, naked from the waist down, and bleeding profusely. Barger testified that he saw a second man, who he identified as the Appellant, emerge from the back room and drag the

victim by her hair towards the back room. Barger claimed he left the store out of fear for the safety of his own family who were waiting for him in their car. At trial, the defense characterized Barger as an alternate suspect and on appeal attempts to marginalize his testimony as unreliable "snitch" testimony. However, it is the province of the jury to assess the credibility of witnesses and the weight to assign to their testimony.[7]

In ruling on a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth to determine if the evidence is sufficient to induce the jury to believe beyond a reasonable doubt that the defendant is guilty.[8] On appeal, the test is "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt" then the defendant is entitled to a directed verdict[9] A review of the evidence presented in this case reveals that the trial court properly determined that a reasonable jury could find guilt beyond a reasonable doubt. As such, there was no error.

## IV.  SENTENCING

On February 15, 2007, an order by the trial court was entered amending the judgment against Appellant to require that the sentences imposed must be run consecutively in accordance with the jury's verdict from the penalty phase of the trial. Appellant claims for the first time on appeal that this sentence is improper. In its brief, Appellee takes the position that since the Appellant did not preserve the sentencing

---

[7] Roark v. Com., 90 S.W.3d 24 (Ky. 2002).

[8] Penman v. Com., 194 S.W.3d 237, 247 (Ky. 2006).

[9] Com. v. Benham, 816 S.W.2d 186, 187 (Ky. 1991).

issue, there is nothing for this Court to review. However, this Court has recognized that sentencing issues may be raised for the first time on appeal.[10]

Since this claim of error was not preserved, it must be reviewed under the palpable error standard and be shown to prevent manifest injustice.[11] For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable."[12] Palpable error exists when the reviewing court believes there is a substantial possibility that the result in the case would be different without the error.[13]

Under Kentucky law, when multiple sentences are imposed for multiple crimes, definite sentences must run concurrently with indefinite sentences.[14] Furthermore, both definite and indefinite sentences are satisfied by service of the indeterminate term.[15] Additionally, this Court has stated that "no sentence can be ordered to run consecutively with such a life sentence in any case, capital or non-capital."[16] Accordingly, Appellant suffered obvious prejudice and manifest injustice by being sentenced to a term of imprisonment greater than permitted by law. For the foregoing reasons, we affirm the convictions, but vacate Appellant's sentence and remand the case to Greenup Circuit Court with instructions to sentence Appellant in accordance with the requirements of K.R.S. 532.110(1)(a).

---

[10] Cummings v. Com., 226 S.W.3d 62, 66 (Ky. 2007).

[11] RCr 10.26.

[12] Burns v. Level, 957 S.W.2d 218, 222 (Ky. 1997)(citing BLACK'S LAW DICTIONARY (6th ed. 1995)).

[13] Schoenbachler v. Com., 95 S.W.2d 830, 836 (Ky. 2003).

[14] K.R.S. 532.110(1)(a).

[15] Ibid.

[16] Bedell v. Com., 870 S.W.2d 779 (Ky. 1993).

All sitting. All concur.

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate
Department of Public Advocacy
Suite 302, 100 Fair Oaks Lane
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

George G. Seelig
Assistant Attorney General
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601-8204

9